## THE MECHANICS INSURANCE COMPANY
### v.
### CHESTER A. HODGE.

*Fire InsurancePolicy—Condition in—Arbitration.*

1. A partial loss by fire does not terminate the insurance. On a subsequent loss a recovery may be had, not exceeding the full amount of the policy, less the amount paid upon the first loss.

2. It is a sufficient answer to the claim of the defendant company, that no recovery can be had against it because the plaintiff did not assent to its request for an arbitration, that the request, restricted as it was to the loss or damage under one of the two fires that occurred, was not such an one as, under the circumstances, was contemplated by the policy.

3. In view of a condition in an insurance policy, providing that only persons having the commission of the company shall be deemed to be its agents, a person insured therein need not, in case of loss, submit to an arbitration insisted upon by a person failing to show such commission.

4. An insurance company can not decline to be liable for a second loss upon given property, upon the ground that work in way of repairs, made necessary by a previous fire, increased the risk, said repairs being made with the knowledge of the company.

5. A contract of insurance is most essentially one of good faith—good faith both before and after a loss.

6. In the case presented, this court holds that it was not necessary for the plaintiff to establish the loss which he incurred at the first, as separate from the second fire, but that it was only necessary for him to show what loss on each of the two classes of articles covered by the policy, he had sustained altogether, and declines to interfere with the judgment in his behalf.

7. A condition in a policy of fire insurance that no suit or action thereon shall be maintainable until after an award shall have been made fixing the amount of the claim, may be waived by the company.

[Opinion filed December 14, 1892.]

APPEAL from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding.

Appellant issued to appellee its policy of insurance for $1,000, viz., $250 on stock of spur wire machines and other specialties not more hazardous, and materials for same; $750 on machinery of all kinds used in his business, including tools, implements and patterns in use.

Appellee had two policies, concurrent as to amount and property.

A fire occurred June 28, 1889. The company was notified and sent an adjuster, who examined the property and estimated the damage at $150 on the three spur wire machines, and $164 on the other goods outside of patterns. The damage to the patterns he estimated at $75.

The building in which the property was situated was of brick and known as Burton Block. The owner of the block in a few days after the fire proceeded to repair it. Proofs of loss were furnished September 7th. An invoice of the property damaged by the fire was furnished by the assured to the company some time in July.

The assured and a Mr. Marshall, an adjuster for the company, had some talk about an appraisement of the loss. Mr. Marshall suggested Mr. Sullivan, who had already appraised the loss for the company, as an appraiser; he also suggested a Mr. Douglass and also a Mr. McDonald. The assured objected to each of these. Mr. Marshall told him to take care of the property.

After this Mr. Hodge took all the small stuff and moved it to his house, 793 Warren avenue; he also took out two of the spur wire machines and sold them for $1,600. Mr. Marshall told him that he must not take anything from the building until the loss was settled.

While the negotiations for a settlement of the loss by the fire of June 28th were going on, a second fire occurred on September 11, 1889. By this latter fire the property remaining in the building was destroyed, so that it was worth only what it would bring for old iron.

October 2d and October 3d, Marshall, the adjuster, in the name of the two companies that had issued the policies, wrote to Mr. Hodge, asking for an arbitration to determine the loss and damage under the fire of June 28th, and named Mr. McDonald as their arbitrator, asking the assured to also name one; to these letters Mr. Hodge made no reply.

September 18th the company wrote to Mr. Hodge, saying that they had learned of the second fire, and that he had machinery in the ruins upon which he claimed a loss; and requested him to get the property out from the ruins and in shape so that his claim might be definitely arrived at and determined.

September 28th the companies wrote to him that "by reason of the extraordinary work being done on the building, lately known as the Burton Block, they denied any liability for loss by reason of the second fire."

There was evidence tending to show that all the property before there was any fire, was worth $5,200; that the three spur machines were then worth.................. $2,400
The patterns....................................    250
And the remainder of the property................  2,550
                                                 _____
                                                  $5,200
The total salvage was on spur machines...........$1,600
On machinery.....................................   225
                                                 _____
                                                 $ 1,825

The jury found a verdict for the assured for $1,000 and interest.

Upon this there was judgment, from which the company prosecutes this appeal.

Messrs. Barnum, Humphrey & Barnum, for appellant.

Messrs. W. F. WIEMERS and U. P. SMITH, for appellee.

MR. JUSTICE WATERMAN. It is insisted by appellants that the assured wholly failed to prove any damage whatever by the first fire; and that he also failed to prove the specific damage to each of the items of property separately covered by the different items of the policy, and that therefore, the amount of the loss by the first fire being undetermined, or unproved, no recovery ought to have been had.

While there were two separate fires and two several losses under this policy, yet, for the purposes of the suit brought under the policy, we think the damage by the two fires is to be considered as constituting but one loss, and that the question before the jury was, What loss, if any, did the plaintiff sustain under the policy he held? and that if he sustained under either the first or the second fire, or both, under each of the separate descriptions of property covered by the policy, a loss equal, respectively, to the total amount of insurance upon such separate items, then a recovery could be had for the full amount of the policy.

We regard the rule as well settled, that a partial loss by fire does not terminate the insurance, but the policy still remains in force; and that, on a subsequent loss, a recovery may be had, not exceeding the full amount of the policy, lessened by the amount which has been paid upon the first loss. May on Insurance, 3d Ed., Sec. 426; Curry v. Commonwealth Ins. Co., 10 Pick. (Mass.) 535; Trull v. Roxbury Mutual Ins. Co., 3 Cush. (Mass.) 263; Crombie v. Portsmouth Mutual Insurance Co., 6 Foster (N. H.), 389.

In the present case, if the loss by fire of June 28th had been followed by another loss occurring from a fire happening on the 30th of June, there having been in the intermediate time no opportunity for an examination of the property to ascertain the amount of damage by the first fire, unless the loss by the two fires could be considered as one loss, no recovery could be had at all, because of the impossibility of determining what the amount of the damage was resulting from each of the several fires.

It is also contended that no recovery can be had, because of the provision of the policy that no suit or action against the company for the recovery of any claim under the policy, shall be sustainable until *after* an award shall have been obtained fixing the amount of such claim. This provision was one that could be, and we think the evidence shows, was, waived by the company. See Nurney v. The Fireman's Fund Ins. Co., 63 Mich. 633; Wright v. Susquehanna Ins. Co., 110 Penn. St. 29; German American Ins. Co. v. Steiger, 109 Ill. 254.

It is insisted that the insured refused, upon a written request, to submit the question of damage or loss by the first fire to arbitration, and, consequently, that no recovery can be had. The policy does provide that the question of the amount of loss or damage shall, upon the written request of either party, be submitted to arbitrators. No written request for an arbitration was made until after the happening of the second fire. Prior to that time there had been talk between the assured and Mr. Marshall, who was acting for the company, relative to an arbitration. Mr. Marshall had suggested the names of several persons, any one of whom the insurance company was willing to have act on its part as an arbitrator. Mr. Hodge had objected to all of these, and it may be that his objections were not well taken, but the insurance company did not, until after the second fire, make any written request for an arbitration, and therefore did not place Mr. Hodge in a position where he was bound under the terms of the policy to select an arbitrator and submit to an arbitration. Each of the written requests made by the company for an arbitration, restricted such arbitration to an ascertainment of the loss or damage under the fire of June 28th. We do not think that, under the terms of the policy, Mr. Hodge was under obligation at that period, when there had been two fires by which his property had been damaged, to submit to arbitration the question of the loss or damage that had occurred under one of these fires only. The request for an arbitration is in the name of the two companies having risks under which losses

had occurred. Whether to a request for an arbitration, made, not by the Mechanics Insurance Company separately, but made by it in conjunction with another company, Mr. Hodge might not have answered that, by the terms of his policy with appellant, he was not bound, in any arbitration he might have with it, to have included therein an arbitration as to his loss under another policy, is a question which we do not think it now necessary to decide. It is, in our judgment, a sufficient answer to the claim of the company that no recovery can be had against it because Mr. Hodge did not assent to its request for an arbitration, that the request, restricted as it was to the loss or damage under one of the two fires that had occurred, was not such an one as, under the circumstances, was contemplated by the policy.

There is another reason why, in our judgment, the failure of Mr. Hodge to accede to these requests can not prevent his recovery; and that is, that there is no evidence in this record to show that Mr. Marshall, by whom these requests on behalf of the companies he claimed to represent were made, was such an agent as, under the terms of the policy, Mr. Hodge was under any obligation to recognize. The policy provides as follows: " Only such persons as shall have the commission of the company shall be considered as its agents in any transaction relating to its insurance or any renewal thereof, or the payment of premium to the company. Any other person shall be deemed to be the agent of the assured, and payment of the premium to such person shall be at the sole risk of the assured." If Mr. Marshall held any commission from the company, Mr. Hodge does not appear to have been notified thereof; and, as has been said, there is nothing in the record in this case to show that Mr. Marshall ever held the commission of this company.

It is also insisted that the assured failed to make proof of loss by the first fire within a reasonable time thereafter. If such is the case, it was a matter of defense, and the verdict of the jury must be construed as deciding this contention against appellant.

It is also insisted that assured sold and removed part of

the property, and moved other portions of the property, and refused to inform the insurance company where the said property was removed to. The policy provides that the company shall not be liable for any loss by theft at or after a fire, nor for damage caused by or resulting from the failure of the assured to use his best endeavors in saving and protecting the property from damage at or after a fire. It was shown in evidence that, immediately after the fire of June 28th, Mr. Hodge made a schedule of the several articles which he claimed had been damaged by that fire; that this was given to the insurance company, and their adjuster, with an agent selected by them, examined the property and made an estimate of the loss or damage to each article; that within three or four days after the fire of June 28th, the owner of the Burton Block, in which the property was situated, put a large force of men to work thereon for the purpose of repairing the damage done by the fire; that some articles belonging to appellee, among other things, half a dozen vises, were stolen. Appellee, therefore, removed a quantity of small articles to his house. The evidence is that these did not exceed in value the sum of $300. They were afterward sold for the sum of $225, and to that extent diminished the loss which appellee sustained. He also sold two of the spur machines for the sum of $800 each. One of these was removed from the building before the second fire occurred, but the other, although appellee had received payment in full therefor in cash, remained in, and was destroyed in the second fire. Appellee does not claim that appellant is liable for any loss occurring in the second fire to either of the two machines he sold. And in the consideration of this case, all loss upon the $300 worth of property taken by him to his house, might be thrown out of consideration without affecting the total liability of appellant.

It therefore appears that appellee, being, as he was under the terms of the policy, bound to use his best endeavors to protect the property from loss or damage at or after a fire, at a time when a large number of workmen were

engaged in repairing the building in which it was contained, and when necessarily such property would be exposed, not only to loss by theft, but to damage from the work being carried on, removed out of the building certain property, thereby lessening the amount of property which appellant had at risk under its still outstanding policy, and that no damage whatever has come to appellant from the action of appellee in so doing.   There is nothing whatever to show that appellee, in what he did in this regard, did not act in the utmost good faith; nor is there any evidence that he ever refused to inform appellant where the property was, or endeavored to conceal anything that he did.   It does not appear that appellee was ever asked by appellant, as to any property so by him taken away, although there is some testimony that Mr. Marshall, the adjuster for the insurance company, asked Mr. Reed, who, for the purpose of bringing about a settlement of the loss under the first fire, was acting for appellee, where the property had been taken, and that Mr. Reed would not tell him; but there is nothing whatever to show that Mr. Reed had any information upon the subject, or that the inquiry, said to have been made of him, was ever followed up by asking appellee.

There is also testimony that Mr. Marshall, in a conversation by him had with Mr. Reed, refused to allow the machinery to be removed from the building, until an appraisement was had.   The company, after having immediately subsequent to the fire of June 28th, examined the property and had the loss and damage thereto estimated by an agent by it selected, does not seem to have been desirous of having any appraisement made, as it did not make any written request therefor until the second of the following October, twenty days after the second fire had occurred. There certainly must have been under the terms of this policy, some time—even, although an appraisement by arbitrators of the loss or damage had not been had—when the assured could remove all or any of his property for the purpose of protecting it from further harm, or make such use thereof as he rightfully might.   And we see no reason

for holding in this case that the exercise of the right of removal at the time and under the circumstances was unreasonable or unwarranted.

It is also insisted that the risk was increased and made more hazardous and the policy rendered void by reason of the extraordinary work done in and about the building, in reconstructing the same after the first fire. It must be borne in mind that the doing of this work was not in any way or wise by the procurement of the assured; that it was something he could not prevent, and over which he had no control, and that the company had full knowledge it was going on. If it had desired to terminate its policy on account of the increased risk thereby caused, it could easily have done so, but, not having taken any steps in that regard, it was too late for it, after the second fire, to then notify the assured that because of such extraordinary work, it would not be bound for the loss that had happened under said second fire. Reaper City Ins. Co. v. Jones, 62 Ill. 458; North British Ins. Co. v. Steiger, 124 Ill. 81; Williamsburgh City Ins. Co. v. Cary, 83 Ill. 453.

Indeed, the intention to consider its policy at an end because of such extraordinary work, appears to have been an afterthought; it was not until the 28th of September, 1889—seventeen days after the second fire—that it gave notice to the assured that, " by reason of the extraordinary work being done in and on the building, known as the Burton Block," it denied any liability for loss under its policy by reason of said second fire.

Moreover, being duly notified on the 11th of September of the fire which had occurred on that day, and that the property insured by appellant had been totally destroyed thereby, it, on the 18th of the same month, wrote to Mr. Hodge, requesting him to get the property on which he claimed a loss or damage from the company, out from the ruins and put the same in proper shape, in order that the claim which he had made might be definitely arrived at and determined.

In the consideration of the objections urged against a

recovery in this case, it must be borne in mind that appellee has, without any fault or negligence on his part, sustained a great loss by two fires; that the policy to him issued by appellant was designed as an indemnity to him against such loss or damage, to the extent of $1,000; that if he can not now recover against the insurer, it is solely because of mistakes by him made subsequent to the fire, while acting, so far as appears, in the utmost good faith. We can but feel that the officers of this insurance company, as honorable and high-minded men, would regret such a result. We do not believe that they regard that, as soon as a loss under a fire has occurred, the position of the insured and the insurer becomes hostile to each other, and that either may do on the one hand anything to increase the loss which the company will sustain, or, on the other, anything to prevent a fair ascertainment, adjustment and payment of the loss. Contracts of this kind are necessarily construed most strongly against the insurer. A contract of insurance is most essentially one of good faith—good faith both before and after a loss has occurred, and it ought not to be under this, or any other, insurance policy, a difficult thing for a plain, unlettered, honest man to so conduct himself as that there shall be no great difficulty in his recovering such loss as, within the terms of the policy, he has actually sustained.

We are entirely in accord with the learned counsel for appellant when they insist that appellee was bound to prove that he had sustained a loss to the extent of $500 on spur machines, and of $1,500 on his machinery, tools, implements, etc., in use, in order to justify a recovery for the full amount of the policy. We think the evidence fairly establishes such loss.

The jury were asked to, and did, find specially what the loss was on spur machines, and separately what the loss was on machinery in each of the several fires; and it is said that there is no evidence in the record from which, by any possibility, such separate finding by the jury made can be arrived at. If we were disposed to concede that this is the

Getman v. Guardian Fire Ins. Co.

case, we do not think it would be material, for the reason that, as we have heretofore said, we do not think that upon the trial of this case it was necessary, so far as appellee was concerned, to consider or establish the loss which he incurred at the first, as separate from the second fire; but, that it was only necessary for him to show what loss on each of the two classes of articles covered by the policy he had sustained altogether. So that, in our judgment, the questions propounded to the jury in this regard need not have been submitted to them, and their finding in this regard, although entirely consistent with the general verdict, is of no consequence.

The instructions to the jury were such that appellant has no just reason for complaining of them.

The judgment of the Circuit Court will be affirmed.

*Judgment affirmed.*